# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 18-1517-M
Information re Cellular Telephone, Call Number )
267-323-9584, Stored at Premises Controlled by T-Mobile )
US, Inc. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment "A."

located in the _____ District of ___New Jersey___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment "B."

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sect. 1951 | Robbery that interferes with commerce. |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI Special Agent Adam Cook
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Sept. 26, 2018

*Judge's signature*

City and state: Philadelphia, PA.
U.S. Magistrate Judge LYNNE A. SITARSKI
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION RE CELLULAR TELEPHONE, CALL NUMBER 267-323-9584, STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | Case No. 18-1517-m<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Adam Cook, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number 267-323-9584 that is stored at premises controlled by T-Mobile US, Inc., a wireless telephone service provider headquartered at 12920 SE 38th Street, Bellevue, Washington 98006, whose records are maintained by its Custodian of Records located at 4 Sylvan Way, Parsippany, New Jersey. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile US, Inc. to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since December 2017. I am currently assigned to the Philadelphia Division, Violent Crimes Task Force (VCTF). My current duties include, among other things, the investigation of bank robberies, fugitives, and Hobbs Act robberies in violation of Title 18, U.S.C. § 1951. I have

received extensive training in conducting criminal investigations from the FBI Academy in Quantico, Virginia. Further, I have also received training and experience as a Police Officer for approximately four years prior to December 2017.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1951(a) (robbery which interferes with interstate commerce and conspiracy), 18 U.S.C. §§ 924(c) (use of a firearm in relation to a crime of violence), and 18 U.S.C. §§ 922(g) (felon in possession of a firearm) have been committed by ANTHONY WRIGHT. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. In support of this application, the government hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the historical call detail information, cell site information, and cell site sector information will be relevant and material to an ongoing criminal investigation.

6. On Wednesday, March 28, 2018, at approximately 7:39 p.m., an armed male entered Sunoco A-Plus, 8203 West Chester Pike, Upper Darby, Pennsylvania 19082. The offender (UNSUB) pointed a gun at the store employee and demanded money; the UNSUB departed the store with approximately $449.45. The UNSUB was described as a black male

wearing a black and white colored mask and carrying a small black semi-automatic handgun. Fingerprints were recovered from the cash drawer that the UNSUB touched and the prints were submitted for processing.

7. On Friday, April 27, 2018, at approximately 1:43 a.m., an armed male entered Wawa, 189 Belmont Avenue, Belmont Avenue, Belmont Hills, Pennsylvania 19004. The offender (UNSUB) attempted to take money from the cash register, but was unsuccessful. The UNSUB demanded two customers in the store give him everything in their pockets; the UNSUB took a wallet from one customer and a wallet and iPhone from the second customer. The UNSUB was described as a black male, wearing all black, a black and white skull facemask, one white glove on his left hand, and was armed with a semi-automatic handgun in his left hand.

8. On Saturday, May 5, 2018, at approximately 8:13 p.m., an armed male entered Rite Aid Pharmacy, 62 E Baltimore Avenue, Lansdowne, PA 19050. The offender (UNSUB) threw the employee to the ground, threatened to shoot the employee, and demanded the employee give him money. The employee opened the cash register and the UNSUB took approximately $419.00. The UNSUB was described as a black male, wearing a black hooded sweatshirt, black pants, black shoes, and a mask with a skeleton on it. Further, the UNSUB was armed with a black semi-automatic handgun that he held in his left hand.

9. On Sunday, May 6, 2018, at approximately 8:54 p.m., an armed male entered 7-Eleven, 639 Long Lane, Upper Darby, Pennsylvania 19082. The offender (UNSUB) ordered the store employee to open the cash register and the UNSUB jumped over the counter to the cash register; the UNSUB took an unknown amount of cash and a few cartons of cigarettes. The UNSUB was described as a black male, wearing all black, a skeleton mask covering his face, and was armed with a black semi-automatic handgun.

10. On Monday, May 14, 2018, at approximately 2:13 a.m., an armed black male entered 7-Eleven, 500 East Baltimore Avenue, Clifton Heights, Pennsylvania 19018. The offender (UNSUB) walked behind the counter and ordered the store employee to open the cash register, while the UNSUB pointed the gun at the store employee. The UNSUB took approximately $484.00 from the cash register and 12 to 14 packs of cigarettes from a shelf. The UNSUB was wearing a black hooded jacket, black pants, a black skull mask, and was armed with a black hand gun, which was held in the UNSUB's left hand.

11. On Monday, May 14, 2018, at approximately 8:24 a.m., an armed male entered Pantry One, 185 East Plumstead Avenue, Lansdowne, Pennsylvania 19050. The offender (UNSUB) entered the store and jumped over the counter. The store employee escaped to a back room and locked the door. The UNSUB attempted to gain access to the back room, but was unsuccessful. The UNSUB departed the store without taking anything. The UNSUB was described as a black male, short in height, thin, wearing all black, a black skeleton mask, possible gloves, and was armed with a handgun in his left hand.

12. On Friday, May 18, 2018, at approximately 7:55 p.m., an armed black male entered Walgreens, 300 North 63rd Street, Philadelphia, Pennsylvania 19139. The offender (UNSUB) approached the cash register and pointed a gun at the store employee and demanded money. The store manager opened the cash register and opened an additional safe behind the counter; the UNSUB took approximately $675. The UNSUB departed the store on foot and was observed on surveillance video arriving and departing the area in a 1996-1998 green Ford Mustang. The UNSUB was described as a black male, approximately 5'7" in height, medium build, wearing all black, a black skeleton mask, and was armed with a gun.

13. On Monday, May 21, 2018, at approximately 6:20 p.m., an armed black male entered Auto Zone, 5300 West Baltimore Pike, Clifton Heights, Pennsylvania 19018. The offender (UNSUB) approached the store employees and forced them behind the counter to the cash register. The UNSUB demanded an employee give him all the cash and the employee handed the UNSUB the cash from the register; the UNSUB took approximately $800 from the cash register and a wallet from one of the store employees that contained approximately $100 in cash. The UNSUB was described as a black male, 5'6" in height, thin build, wearing all black, a black and white skeleton facemask, and armed with a black and silver firearm.

14. On Tuesday, May 22, 2018, at approximately 12:34 a.m., an armed black male entered 7-Eleven, 639 Long Lane, Upper Darby, Pennsylvania 19082. The offender (UNSUB) pointed the gun at store employees and demanded that they open the cash registers; the UNSUB left the store with approximately $1,661.00. The UNSUB was described as a black male, wearing dark jeans, a black jacket, black skull facemask, and was armed with a gun.

15. On Saturday, May 26, 2018, at approximately 8:50 p.m., an armed black male entered 7-Eleven, 7720 Ogontz Avenue, Philadelphia, Pennsylvania 19150. The offender (UNSUB) demanded cash from a store employee from two cash registers; the UNSUB took approximately $500.00. While the UNSUB was waiting for cash from the second cash register, a second store employee approached the UNSUB from behind and hit the UNSUB in the back of the head with a baseball bat. A third store employee threw a display shelf at the UNSUB as the UNSUB was hit in the head with a baseball bat. The UNSUB then departed the store. The UNSUB was described as a black male, approximately 5'6" in height, wearing all black, a black Halloween mask, and armed with a black and silver semi-automatic handgun in his left hand.

16. Commercial retail stores engage in interstate commerce, which is disrupted by the above-mentioned robberies. Based on the facts of each robbery incident, law enforcement believes that the offender is the same for all the above stated robberies. The offender uses a skeleton type of facemask in all of the robberies, surveillance video shows the offender uses a black handgun that is held in his left hand, the physical description of the offender and what the subject wears is similar, and the general modus operandi is the similar for all of the robberies of commercial retail stores.

17. The Philadelphia Police Department recovered a Green Ford Mustang at an auto repair lot at 510 N. 63rd Street, Philadelphia, PA, that appeared to be similar to the vehicle identified in the May 18, 2018 robbery of Walgreens. Further investigation determined that an individual named ANTHONY WRIGHT sold this car to the auto repair lot without proper registration paperwork. WRIGHT provided a driver's license to the auto dealer when the car was sold.

18. The fingerprint recovered from the crime scene on March 28, 2018 at Sunoco A-Plus provided a positive match. This fingerprint was processed by the Delaware County District Attorney's Office - Criminal Instigative Division and was compared to known prints that belonged to ANTHONY WRIGHT. This comparison provided a positive match for WRIGHT.

19. Criminal history checks show that WRIGHT is a convicted felon. WRIGHT was convicted of Robbery – Inflicting the Threat of Immediate Bodily Injury in 2011; Robbery – Inflicting the Threat of Immediate Bodily Injury and Conspiracy of Robbery – Inflicting the Threat of Immediate Bodily Injury in 2011; and Robbery – Inflicting the Threat of Immediate Bodily Injury in 2014.

20. On June 15, 2018, ANTHONY WRIGHT was arrested pursuant to an arrest warrant obtained by the Upper Darby Police Department for the robbery that occurred on March 28, 2018 at Sunoco A-plus. Additionally, a Warrant to Commit and Detain was issued by the Commonwealth of Pennsylvania Board of Probation and Parole.

21. I have confirmed that the Subject Telephone Number is assigned to T-Mobile US, Inc. Further, it was confirmed that the telephone number 267-323-9584 belongs to ANTHONY WRIGHT. I, SA Cook, received a phone call from WRIGHT on this phone number and WRIGHT also provided this number as his phone number in an interview pursuant to his arrest.

22. In my experience investigating violent crimes such as robberies, people who engage in robberies will often times communicate with their coconspirators and/or accomplices by way of cellular telephone before, during, and after the commission of an offense. In addition, robbery crews often consist of numerous members who participate in some offenses but not others. Therefore, it is possible that a member who participated in one offense did not participate in all offenses committed by the crew.

23. In my training and experience, I have learned that T-Mobile US, Inc. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

24. Based on my training and experience, I know that T-Mobile US, Inc. can collect cell-site data about 267-323-9584. I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

25. Based on my training and experience, I know that wireless providers such as T-Mobile US, Inc. typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile US, Inc. typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27. I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile US, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Adam Cook
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _Sept. 26_, 2018

BY THE COURT:

HONORABLE LYNNE A. SITARSKI
United States Magistrate Judge

9

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number 267-323-9584, that are stored at premises controlled by T-Mobile US, Inc. ("the Provider"), headquartered at 12920 SE 38th Street, Bellevue, Washington 98006.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of March 1, 2018 through June 14, 2018.

a. The following information about the customers or subscribers of the Account:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. information regarding the cell towers and sectors through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. §§ 1951(a) (robbery which interferes with interstate commerce and conspiracy), 18 U.S.C. §§ 924(c) (use of a firearm in relation to a crime of violence), and 18 U.S.C. §§ 922(g) (felon in possession of a firearm) involving ANTHONY WRIGHT during the period of March 1, 2018 to June 14, 2018.